125 P.3d 1061

Douglas S. CALLAGHAN,
Plaintiff–Appellant,

v.

Danielle R. CALLAGHAN, a/k/a Danielle
R. Muntean, Defendant–Respondent.

State of Idaho, Department of Health
& Welfare, Plaintiff,

v.

Douglas S. Callaghan, Defendant.

No. 30916.

Supreme Court of Idaho,
Moscow, October 2005 Term.

Nov. 1, 2005.

Rehearing Denied Dec. 23, 2005.

Craig C. Kosonen, Osburn, argued for appellant.

Fullwiler & Harrison PLLC, Coeur d'Alene, for respondent. Ruth Fullwiler argued.

EISMANN, Justice.

This is an appeal from the district court's orders dismissing appeals from decisions of the magistrate judge in post-divorce proceedings and awarding attorney fees pursuant to Idaho Code § 12–121. We affirm the dismissal of the appeals and the award of attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

The appellant Douglas S. Callaghan (Douglas) and the respondent Danielle R. Callaghan (Danielle) were divorced by a judgment entered on May 14, 1993. Danielle was awarded the primary physical custody of the parties' three minor children, and Douglas was ordered to pay child support in the sum of $422.00 per month plus one-half of the medical insurance premiums and uninsured medical expenses for the children. The decree provided that when the oldest child reached age nineteen or graduated from high school, the child support paid by Douglas would be in accordance with the Idaho Child Support Guidelines for the two younger children, until they reached age nineteen or graduated from high school.

By order entered on June 20, 1996, Douglas's monthly child support payment was reduced to $350.00 per month based upon a stipulation of the parties. That order also provided that by June 1st of each year the amount of the monthly child support payment would be recalculated annually based upon the parties' incomes for the prior year. The parties' oldest child graduated from high school in June 1997, and the second oldest child graduated from high school in June 2001.

On December 28, 2001, the Department of Health and Welfare, at Douglas's request, filed a petition to intervene in this action and to modify Douglas's monthly child support payment to $438.00. The Department filed a second petition on January 24, 2002, seeking to reduce Douglas's monthly child support payment to $204.00. On June 10, 2002, Danielle filed a motion seeking to have Douglas held in contempt for the failure to pay court-ordered child support, including his share of the medical expenses.

The magistrate judge heard the contempt matter on October 31, 2002, and on January 6, 2003, he entered an order finding Douglas in contempt for failing to pay monthly child support totaling $6,030.89, for failing to pay his share of medical insurance premiums and uninsured medical expenses for the children totaling $5,176.14, and for failing to pay a debt of $488.10 that he had been ordered to pay in the divorce decree. The magistrate sentenced Douglas to serve a total of forty days in jail, to commence on April 1, 2003. The magistrate further ordered that Douglas could purge the contempts by paying $11,695.13 plus interest, costs, and attorney fees before April 1, 2003.

On February 21, 2003, the magistrate heard the motion to modify Douglas's monthly child support obligation for the parties' remaining minor child. By order entered on March 3, 2003, the magistrate increased Douglas's monthly child support obligation to $380.00 and reduced his share of the remaining child's uninsured medical expenses to 46% of those expenses. On March 17, 2003, Douglas filed a motion to amend certain findings of fact made by the magistrate, and the magistrate denied that motion by order entered on April 3, 2003.

On April 1, 2003, Douglas sought an *ex parte* order staying enforcement of the contempt order. By order entered on April 3,

2003, the magistrate judge denied the motion because it had been submitted *ex parte*. On April 8, 2003, Douglas submitted a Rule 54(b) certificate with respect to the contempt order, which the magistrate judge refused to sign because the contempt order was already final. On April 10, 2003, Douglas submitted a second proposed Rule 54(b) certificate accompanied by his counsel's affidavit. By order entered on April 17, 2003, the magistrate again denied the requested Rule 54(b) certificate on the ground that the contempt order was final when it was entered on January 6, 2003.

On May 15, 2003, Douglas filed a notice of appeal from the contempt order entered on January 6, 2003; from the order entered on April 3, 2003, refusing to stay the contempt order; and from the order modifying child support entered on March 3, 2003. On May 29, 2003, he filed a notice of appeal from the order denying the Rule 54(b) certificate. These were designated as the "first appeal" and the "second appeal."

On October 3, 2003, the district judge issued an order conditionally dismissing the appeal unless Douglas paid the estimated transcript fee within seven days. Douglas then unsuccessfully sought several times to have a magistrate judge enter an order waiving the transcript fee, even though Rule 83(k)(1) of the Idaho Rules of Civil Procedure requires that the district judge issue any such order.

On October 3, 2003, the district court issued an order conditionally dismissing the appeal for nonpayment of the estimated transcript cost. On the same date, the clerk of the court sent notice to the parties of an "appeal hearing" scheduled for December 19, 2003. Neither Douglas nor his counsel appeared at that hearing, and the district court dismissed the appeals for the failure to prosecute them. The district court also awarded Danielle attorney fees under Idaho Code § 12–121. Upon Douglas's motion for alternative relief, which the district court considered to be a petition for rehearing, the district court modified its prior order. It reinstated the appeal from the order modifying child support on the ground that the appeal from that order was timely and it adhered to its dismissal of the other appeals, although on different grounds. Douglas then appealed to this Court.

## II. ISSUES ON APPEAL

A. Did the district court err in dismissing Douglas's appeal from the contempt order entered on January 6, 2003?

B. Did the district court err in dismissing Douglas's appeal from the magistrate judge's refusal to issue a Rule 54(b) certificate with respect to the contempt order?

C. Did the district court err in dismissing Douglas's appeal from the magistrate judge's refusal to stay the jail sentence ordered for contempt?

D. Did the district court err in awarding attorney fees to Danielle?

E. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

**A. Did the District Court Err in Dismissing Douglas's Appeal from the Contempt Order Entered on January 6, 2003?**

██ By order entered on January 6, 2003, the magistrate judge found Douglas in contempt and ordered him to serve a total of forty days in jail. Douglas did not seek to appeal that order until May 15, 2003. The district court dismissed that appeal on the ground that it was untimely.

An appeal to the district court from a final order or judgment entered in the magistrate division must be filed within forty-two days after entry of the order or judgment. I.R.C.P. 83(e). The order finding Douglas in contempt and imposing a penalty was a final order. The divorce decree was a final judgment entered on May 14, 1993. The child support provision in that judgment was later amended by order entered on June 20, 1996. The magistrate judge found Douglas in contempt for failing to make payments required by that judgment as amended. The contempt order entered on January 6, 2003, was a final order because it was appealable as an

order made after final judgment. *Camp v. East Fork Ditch Co., Ltd.,* 137 Idaho 850, 55 P.3d 304 (2002); I.R.C.P. 83(a)(2); I.A.R. 11(a)(7). Because Douglas did not file a notice of appeal within forty-two days after entry of the contempt order, the district court did not have jurisdiction to consider the appeal from that order and properly dismissed it. *Palmer v. Wellard,* 97 Idaho 197, 541 P.2d 621 (1975).

Douglas contends that the issue of contempt was intertwined with the motion to modify child support, and therefore we should hold that the contempt order did not become final until the motion to modify was determined. He bases this contention upon the fact that his obligation to pay child support for two of the children had ended upon their graduation from high school. According to him, the motion to modify child support filed by the Department of Health and Welfare could result in a retroactive reduction of his child support obligation, which would have reduced the arrearages upon which the contempt was based.

Although child support can be modified only as to installments accruing after the motion for modification is filed, *Rohr v. Rohr,* 128 Idaho 137, 911 P.2d 133 (1996); I.C. § 32–709, Douglas argues that in his case the modification should have been self-executing upon the dates the children graduated because it is based upon the termination of his obligation to pay support for the two older children. He bases his argument that the modification was self-executing upon *Toyama v. Toyama,* 129 Idaho 142, 922 P.2d 1068 (1996). Douglas's argument is not persuasive.

The divorce decree in this case incorporated by reference the parties' property settlement agreement, which included their agreement regarding child support. The decree did not contain a self-executing provision modifying Douglas's monthly child support obligation once a child reached age nineteen or graduated from high school. It required that he pay a specified sum per month as child support for three children. The child support was stated in an aggregate amount, not as a specific sum per child. The decree did not include a provision reducing the amount of child support to a specified sum upon the emancipation of each child. It simply stated that once the oldest child either reached age nineteen or graduated from high school, whichever occurred first, "support shall be paid by the Husband in accordance with the Idaho Child Support Guidelines for the younger two children, until they reach age 19 or graduate from high school."

The emancipation of a child would not result in a proportional reduction in Douglas's monthly child support obligation. Under the Idaho Child Support Guidelines, the aggregate monthly child support obligation for multiple children is not based upon an equal sum per child. For example, if the parents have a combined gross monthly income of $5,000, the total child support to be prorated between them would be $725 for one child, an additional $367 for a second child, and an additional $208 for a third child. In that scenario, the emancipation of one child, with everything else remaining the same, would reduce the total monthly support for the remaining two children by 16%, not by one third. The decree did not even state how Douglas's monthly child support obligation had been calculated.

The order entered on June 20, 1996, that modified Douglas's monthly child support obligation did not add a self-executing provision to the decree. In fact, it required that his obligation be recalculated by June 1st of each year based upon the parties' incomes for the prior year. Such recalculation was to be in accordance with the Idaho Child Support Guidelines.

There is simply no basis for holding that the decree contained a self-executing provision reducing Douglas's monthly child support obligation upon the emancipation of a child. Until the emancipation of the last child, any modification of Douglas's monthly child support obligation would have to be by court order. If he believed that his monthly child support obligation would decrease upon the emancipation of either of the first two children, he was required to bring appropriate proceedings seeking a modification of his monthly support obligation. Because any modification would be based upon the parties' current incomes, such proceedings could re-

sult in an increase or a decrease in the amount of his monthly child support obligation. For example, as a result of the modification proceedings instituted by the Department of Health and Welfare at Douglas's request, his monthly child support obligation increased by $30 even though two of the children were emancipated.[1]

If, as Douglas contends, there had been a self-executing decrease in the amount of his monthly child support obligation upon a child's high school graduation, such issue could have been raised and decided in the contempt proceeding. He did not have to await the determination of the motion to modify the child support. In fact, if the modification of his monthly child support obligation were self-executing upon a child's emancipation, there would have been no need for the motion to modify the child support provision in the divorce decree.

The motion to modify child support and the motion for contempt were two separate post-judgment proceedings that were independent of each other. The contempt matter was tried and decided first. The contempt order entered was a final order, which Douglas could have appealed. The district court did not err in dismissing the appeal as being untimely.

**B. Did the District Court Err in Dismissing Douglas's Appeal from the Magistrate Judge's Refusal to Issue a Rule 54(b) Certificate with Respect to the Contempt Order?**

█ The contempt order was entered on January 6, 2003. Three months later, Douglas twice asked the magistrate judge to issue a Rule 54(b) certificate with respect to that order. The magistrate refused to do so on the ground that the contempt order was already a final order. Douglas appealed such refusal, and the district court dismissed the appeal on the ground that it was not appealable. We agree.

The purpose of Rule 54(b) was to liberalize the appeals process by permitting some partial judgments to be appealed earlier than

they otherwise could have been appealed. *Merchants, Inc. v. Intermountain Indus., Inc.*, 97 Idaho 890, 556 P.2d 366 (1976). "Rule 54(b) was adopted to overcome the 'single judicial unit theory' which seriously inconvenienced persons involved in multi-party or multiple claim actions by forcing them to await the adjudication of 'the whole case and every matter in controversy in it' before being allowed to appeal." *Id.* at 892, 556 P.2d at 368.

There is no provision in the civil or appellate rules making the refusal to issue a Rule 54(b) certificate immediately appealable. It is not a final order. Although interlocutory orders can be reviewed on an appeal from a final judgment, *Miller v. Haller*, 129 Idaho 345, 924 P.2d 607 (1996), it would not make any sense to review the refusal to issue a Rule 54(b) certificate in the appeal from the final judgment ultimately entered in the case. If we were to conclude that a trial court had abused its discretion by refusing to issue a Rule 54(b) certificate, we could not grant any relief. A Rule 54(b) certificate would merely have permitted an earlier appeal, which we are powerless to order. We cannot turn back the clock so that the appeal could be filed and decided sometime in the past.

**C. Did the District Court Err in Dismissing Douglas's Appeal from the Magistrate Judge's Refusal to Stay the Jail Sentence Ordered for Contempt?**

The magistrate judge ordered Douglas to report to jail on April 1, 2003. On that date, Douglas filed a motion seeking to stay enforcement of the jail sentence. The magistrate denied that motion by order entered on April 3, 2003, and Douglas timely appealed that denial. The district court initially dismissed the appeal because of Douglas's failure to appear at the hearing on December 19, 2003. In response to Douglas's petition for rehearing (denominated a motion for alternative relief), the district court reconsidered the basis for the dismissal. It noted that the magistrate judge had summarily

---

1. The magistrate judge's modification of Douglas's monthly child support obligation is cited as an example of what could occur. We express no opinion on whether the magistrate erred when setting the amount of child support.

denied the motion for a stay on the ground that it had been submitted *ex parte*. The magistrate did not deny the requested stay on its merits; he simply refused to decide the issue without a hearing. Any appeal would center upon the manner in which the motion had been presented and not upon the merits of the requested stay. The district court concluded that the appeal should be summarily dismissed for that reason.

■ On appeal, Douglas does not challenge this ruling by the district court. He argues that the district court erred when it originally dismissed the appeal for the failure of his counsel to appear at the hearing on December 19, 2003. He does not address the district court's later basis for dismissing this appeal. We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument. *KEB Enters., L.P. v. Smedley*, 140 Idaho 746, 101 P.3d 690 (2004).

Douglas also argues at length regarding the district court's first order dismissing the appeals for Douglas's failure to appear at the hearing on December 19, 2003. Because the district court later reconsidered its order and changed its bases for dismissing the appeals, we need not consider Douglas's arguments regarding the initial dismissals.

### D. Did the District Court Err in Awarding Attorney Fees to Danielle?

■ The district court awarded Danielle attorney fees pursuant to Idaho Code § 12–121 for the dismissed appeals. It found that they had been brought frivolously, unreasonably, or without foundation. Douglas contends that such finding was erroneous. A lower court's award of attorney fees under Idaho Code § 12–121 is reviewed under an abuse-of-discretion standard. *Graham v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 611, 67 P.3d 90 (2003).

■ The appeal of the contempt order was clearly untimely. Douglas contended that the order entered on January 6, 2003, could not be appealable without a Rule 54(b) certificate. As we stated in *Camp v. East Fork*

*Ditch Co., Ltd.*, 137 Idaho 850, 860, 55 P.3d 304, 314 (2002) (internal citations omitted), there are four circumstances in which a contempt order can be appealed:

A contempt order is appealable under the same circumstances as any other order or judgment entered in a civil or criminal action. Under Idaho Appellate Rule 11, a contempt order entered against a party in a civil case can be appealed as a matter of right [1] if it is certified as final under Rule 54(b) of the Idaho Rules of Civil Procedure, or [2] if it was made after entry of the final judgment in the case, [3] if it was made before the final judgment and the party appeals from the final judgment, or [4] if the contempt order itself is a final judgment or order.

The contempt order in this case was made after entry of the final judgment in the case. It was therefore clearly appealable as a final order and did not need to be certified under Rule 54(b). The district court did not abuse its discretion in awarding attorney fees related to that appeal.

■ The appeal of the denial of the Rule 54(b) certificate was tied to the untimely appeal of the contempt order. Douglas requested the Rule 54(b) certificate after the magistrate judge had decided both the contempt matter and the requested modification of child support. Douglas's asserted reason for needing the Rule 54(b) certificate was to be able to appeal the contempt order. As we stated in *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 55 P.3d 304 (2002), a contempt order entered after the final judgment in a case is appealable without a Rule 54(b) certificate. Our opinion in *Camp* was released almost four months before the entry of the contempt order in this case and over six months before Douglas requested a Rule 54(b) certificate. Douglas's argument regarding the necessity of the Rule 54(b) certificate in order to appeal the contempt order had no basis in the law.

The final issue regarding the attorney fees is the dismissal of the appeal from the magistrate judge's refusal to consider the motion to stay Douglas's jail sentence on an *ex parte* basis.[2] Douglas has not addressed that issue

---

2. Douglas served thirty-two of the days in jail,

and the district court stayed the remaining eight

on this appeal, and it is difficult to conceive how the magistrate could have erred by requiring a hearing where both parties could be heard before ruling on Douglas's requested stay of the jail sentence.

Douglas has failed to show that the district judge abused its discretion in awarding attorney fees pursuant to Idaho Code § 12–121. We affirm the award of attorney fees.

### E. Is Either Party Entitled to an Award of Attorney Fees on Appeal?

 On the last page of his opening brief, Douglas states, "Doug should be awarded attorney fees for bringing this appeal." He does not cite any statute or contractual provision that would authorize an award of attorney fees to him. He is not entitled to an award of attorney fees on appeal. *State ex rel. Wasden v. Daicel Chemical Indus., Ltd.,* 141 Idaho 102, 106 P.3d 428 (2005).

At the conclusion of her argument in support of the district judge's award of attorney fees pursuant to Idaho Code § 12–121, Danielle stated, "For the reasons that DOUG has brought this appeal frivolously and without foundation, DOUG should be ordered to pay DANIELLE's attorney's fees and costs." That is a sufficient request for attorney fees on appeal pursuant to Idaho Code § 12–121. Her arguments regarding the merits of the appeal and the district court's awarding of attorney fees under § 12–121 apply to her request for attorney fees on appeal pursuant to the same statute.

 Attorney fees can be awarded on appeal under § 12–121 only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). The appeal in this case qualifies for the award of attorney fees under that statute. We therefore award Danielle attorney fees on appeal.

### IV. CONCLUSION

The orders of the district court dismissing the appeals and awarding attorney fees are affirmed. We also award the respondent

days during the pendency of this appeal.

costs, including a reasonable attorney fee, on appeal.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

